## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| JEREMY J. COBB, *on behalf of himself and all others similarly situated*, | Civil No. 13-3091 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| PAYLEASE LLC, | |
| Defendant. | |

Thomas J. Lyons, Jr., **CONSUMER JUSTICE CENTER P.A.**, 367 Commerce Court, Vadnais Heights, MN 55127, for plaintiff.

Michael Bruce Miller, **MORRISON & FOERSTER LLP**, 250 West 55th Street, New York, NY 10019; and Joseph G. Schmitt, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant.

Plaintiff Jeremy Cobb brings this action alleging violations of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), as well as claims for conversion and unjust enrichment against Defendant PayLease LLC ("PayLease") arising out of an insufficient funds return fee assessed to Cobb's bank account by PayLease. Cobb's complaint also includes class allegations. PayLease moves to dismiss Cobb's Amended Complaint in its entirety. Because, taking the allegations in the Amended Complaint as true, Cobb has stated a claim under EFTA, and his allegations fall within the scope of conversion and unjust enrichment theories, the Court will deny PayLease's motion.

**BACKGROUND**

## I.   THE RETURNED FEE

On May 14, 2013, Cobb submitted an apartment rental application to Common Properties Management Cooperative ("Common Properties").  (Am. Compl. ¶ 11, Jan. 2, 2014, Docket No. 14.)   As part of the application process Cobb spoke to a Common Properties representative by telephone and authorized an Automated Clearing House ("ACH") debit from his checking account in the amount of $37.95.  (*Id.* ¶¶ 11-12.)  The amount authorized included an application fee of $35.00 plus a convenience charge of $2.95.  (*Id.* ¶ 11.)

On May 16, 2013, due to insufficient funds in Cobb's account, the ACH debit initiated by Common Properties was returned by Cobb's bank as unpaid.  (*Id.* ¶ 15.)  That same day, Cobb's bank assessed a Non-Sufficient Funds ("NSF") fee of $35.00 to Cobb's account.  (*Id.* ¶ 16.)  On May 29, 2013, PayLease,[1] acting as Common Properties' agent, assessed a $25.00 "returned fee" by ACH from Cobb's account in connection with the unpaid application fee.  (*Id.* ¶ 17; Decl. of Michael B. Miller, Ex. A at 2, Feb. 7, 2014, Docket No. 19.)[2]  On June 4, 2013, the $25 returned fee was deposited back into Cobb's account.  (Miller Dec., Ex. A at 3.)

---

[1] PayLease is a limited liability company that processes payments for the property management industry.  (Am. Compl. ¶ 10.)

[2] In support of its motion to dismiss, PayLease submitted the Miller Declaration which includes as an exhibit a redacted copy of Cobb's bank statements showing the transfers at issue in the Amended Complaint.  Generally a motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not

(Footnote continued on next page.)

Cobb alleges that during the telephone conversation with the Common Properties'

representative he "was not asked for permission nor was he asked to grant authorization

for the collection of any fees via electronic fund transfer ("EFT") in the event of a return

of his debit payment."  (Am. Compl. ¶ 13.)  Additionally Cobb alleges that he "did not

voluntarily provide any written or oral permission or authorization to Common

Properties, Defendant PayLease, or Defendant's agents permitting the collection of any

_____

(Footnote continued.)

excluded by the court."  Fed. R. Civ. P. 12(d).  Although "matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading."  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (internal quotation marks omitted).  Documents embraced by the pleadings include those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (internal quotation marks omitted).  Additionally, the Eighth Circuit has cited with approval the rule that "'[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 n.9 (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)).  At least one federal district court has applied this rule to allow consideration of bank account statements produced by defendants in support of a motion to dismiss claims arising out of the relationship between plaintiff and a financial institution.  *See Hospicomm, Inc. v. Fleet Bank N.A.*, 338 F. Supp. 2d 578, 581 & n.3 (E.D. Pa. 2004) (allowing consideration of bank records for the bank accounts at issue in plaintiff's complaint where defendant attached the records to its motion to dismiss and plaintiff discussed the records in its memorandum in opposition to the motion to dismiss).  Other courts have, however, criticized this expansion of a motion to dismiss record to encompass documents that are merely "central to Plaintiffs' complaint" rather than limiting the record to those documents that are "specifically referenced in the pleadings."  *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 780 (N.D. Ill. 2011) (holding that even if the documents presented by defendants were central to plaintiffs' claims and that was sufficient for their consideration at the motion to dismiss stage, it would decline to consider the documents because plaintiffs disputed the authenticity of the documents).  Here, the Court will adopt the approach used in *Hospicomm, Inc.* and consider the bank account statement produced by PayLease in resolving the present motion to dismiss.  The bank statements, although not explicitly referenced in the Amended Complaint, are central to Cobb's claims.  Additionally, Cobb does not dispute the accuracy of the statements and has explicitly referenced the account statements in his memorandum in opposition to PayLease's motion to dismiss as supporting the allegations in the Amended Complaint.  (*See* Pl.'s Mem. in Opp'n to Mot. to Dismiss at 3, 6-7, Mar. 6, 2014, Docket No. 27.)

fees via electronic fund transfer which might result in the event of a return of his ACH debit payment." (*Id.* ¶ 14.)

## II.    AMENDED COMPLAINT

Cobb filed the Amended Complaint on January 2, 2014, bringing three claims against PayLease.  In Count I, Cobb alleges that PayLease violated EFTA by "initiating or causing to be initiated an electronic funds transfer to collect their NSF fee without first obtaining Plaintiff's authorization." (Am. Compl. ¶ 33.)  With respect to this claim Cobb contends that "PayLease has not provided **any** notice whatsoever to the Plaintiff regarding an NSF fee" and "had no basis to expect or believe that Common Propert[ies] provided Plaintiff with any notice that he would be charged an NSF Fee if the ACH was returned due to insufficient funds." (*Id.* ¶¶ 38, 40 (emphasis in original).)  Cobb seeks actual damages "including without limitation the unlawfully collected NSF fees" as well as statutory damages and attorneys' fees in connection with his EFTA claim.  (*Id.* ¶ 44.)  In Count II, Cobb brings a claim for conversion based on the allegation that PayLease unlawfully collected or shared in NSF fees obtained from Plaintiff.  (*Id.* ¶ 46.)  Finally, in Count III, Cobb brings a claim for unjust enrichment based on PayLease's "unlawful[]" collection of NSF fees.  (*Id.* ¶ 51.)

## ANALYSIS

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the

complaint states a "'claim to relief that is plausible on its face.'" *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.    EFTA

EFTA provides a "basic framework establishing the rights, liabilities, and responsibilities of participants" in electronic banking and its primary objective "is the provision of individual consumer rights." 15 U.S.C. § 1693(b). Congress delegated authority and responsibility to the Board of Governors of the Federal Reserve System to "prescribe rules to carry out the purposes of" the Act in order to "prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1693b; *see also* 12 C.F.R. § 205.1. The Board has promulgated administrative regulations codified at 12 C.F.R. Part 205, which are commonly referred to as Regulation E. *See* 12 C.F.R. § 205.1.

With respect to remedies for violations, EFTA provides that "any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer." 15 U.S.C. § 1693m(a). EFTA authorizes class actions and allows for the recovery of actual or statutory damages and attorneys' fees. *Id.*

Cobb brings his EFTA claim under 12 C.F.R. § 205.3(b)(3)(i) which governs notice to consumers with respect to the collection of returned item fees. The regulation provides, in relevant part, that:

> The person initiating an electronic fund transfer to collect a fee for the return of an electronic fund transfer or a check that is unpaid, including due to insufficient or uncollected funds in the consumer's account, must obtain the consumer's authorization for each transfer. A consumer authorizes a one-time electronic fund transfer from his or her account to pay the fee for the returned item or transfer if the person collecting the fee provides notice to the consumer stating that the person may electronically collect the fee, and the consumer goes forward with the underlying transaction. The notice must state that the fee will be collected by means of an electronic fund transfer from the consumer's account if the payment is returned unpaid and must disclose the dollar amount of the fee.

12 C.F.R. § 205.3(b)(3)(i). In its motion to dismiss, PayLease argues that EFTA is not applicable to Cobb's claim because (1) an electronic fund transfer was never completed; (2) the $25 fee has since been recredited to Cobb's account; and (3) the transaction was authorized via telephone. Additionally, PayLease argues that Cobb has failed to adequately plead that PayLease did not provide the statutorily required notice to Common Properties, and therefore fails to state a claim under EFTA. Recognizing that "[a]n EFTA claim should be dismissed when neither the language of the statute nor a provision of Regulation E applies to the defendant's conduct," *Olen v. N. Tier Retail, LLC*, Civ.

No. 11-2665, 2012 WL 1580994, at *2 (D. Minn. May 4, 2012), the Court will address each of these arguments in turn.

## A.    Completed Transfer

PayLease first argues that EFTA does not apply to Cobb's claim because no electronic fund transfer was ever completed.   Specifically, PayLease argues that "according to the facts asserted by Plaintiff, a fee was merely 'assessed' but never actually paid to PayLease" and therefore no electronic fund transfer took place.  (Def.'s Mem. in Supp. of Mot. to Dismiss at 8, Feb. 7, 2014, Docket No. 18.)

> EFTA defines an "electronic fund transfer" as
>
> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(7).  Generally, in order for a defendant's conduct to come within the scope of EFTA the transaction at issue must involve an electronic fund transfer.  *See Vigneri v. U.S. Bank Nat'l Ass'n*, 437 F. Supp. 2d 1063, 1066-67 (D. Neb. 2006) (granting defendant's motion for summary judgment on EFTA claims because the withdrawal at issue did not constitute an electronic fund transfer); *Mitchem v. Paycheck Advance Express, Inc.*, Civ. No. 99-1858, 2000 WL 419993, at *1 (N.D. Ill. Apr. 14, 2000) ("Without an electronic funds transfer, Mitchem's claims under the EFTA cannot be sustained.").   Additionally, where, as here, a plaintiff's claim is based upon a

provision of EFTA or Regulation E that regulates a defendant's conduct as it relates to making an electronic fund transfer, courts have suggested that the electronic fund transfer at issue must have been completed in order for EFTA to apply. *See, e.g.*, *Driessen v. Woodforest Nat'l Bank*, 940 F. Supp. 2d 584, 590 (S.D. Ohio 2013) (dismissing plaintiff's EFTA claim because "[e]mails stating that an $8.3 million electronic transfer from the 'United Nation' to Woodforest (and for Plaintiff's benefit) occurred – sent from various hotmail.com and skymail.mn email accounts . . . – are insufficient proof that an 'electronic fund transfer' in fact occurred"); *McFarland v. Wells Fargo Home Mortg., Inc.*, Civ. No. 05-673, 2006 WL 2830025, at *4 (W.D. Mich. Sept. 29, 2006) ("Defendant did not violate § 1693e(a) because no electronic fund transfers occurred on the five days in question . . . . EFTA's definition of an electronic fund transfer is very specific and does not include an 'attempted' or 'unsuccessful' transfer, as occurred here. . . . The statute is limited to accomplished transfers – meaning that funds have moved from one entity to another.").[3]

---

[3] Some courts have held that an attempt is sufficient to impose liability under EFTA in certain situations. *See Curde v. Tri-City Bank & Trust Co.*, 826 S.W.2d 911, 915 (Tenn. 1992) ("[A] completed transfer of funds is not necessary for coverage under the Act."); *see also Household Fin. Realty Corp. of N.Y. v. Dunlap*, 834 N.Y.S.2d 438, 444 (N.Y. Sup. Ct. 2007). But these cases dealt with a provision of EFTA that imposes liability on financial institutions for failing to make certain electronic fund transfers. *See Curde*, 826 S.W.2d at 915 (citing 15 U.S.C. § 1693h(a)); *Household Fin. Realty Corp. of N.Y.*, 834 N.Y.S.2d at 443-44 (citing 15 U.S.C. § 1693h(a), (b)). Therefore, their conclusion that a completed transfer of funds is not necessary for coverage under EFTA is directly tied to a provision of EFTA which expressly requires no electronic fund transfer to have been completed in order for liability to attach. The conclusions of these courts have little applicability to the regulation invoked by Cobb in his Amended Complaint, which requires the person initiating an electronic fund transfer to obtain authorization for each transfer.

The Court finds that the Amended Complaint in combination with the bank statement produced by PayLease – taken as true – plausibly alleges that an electronic fund transaction was completed by PayLease. Cobb's bank account shows that on May 29 a transaction was initiated by PayLease and $25 was "withdraw[n]/subtract[ed]" from Cobb's account. (Miller Decl., Ex. A at 2.) Furthermore, Cobb alleges that PayLease "assessed" a $25 fee to his account and that the "taking" of the fee from his account was a violation of EFTA. (Am. Comp. ¶¶ 3, 17, 38.) Assess means "[t]o charge (a person or property) with a special payment, such as a tax or fine." *The American Heritage Dictionary of the English Language* 108 (5th ed. 2011). Thus, a plain reading of the Amended Complaint indicates that PayLease charged a $25 fee and the fee was removed from Cobb's bank account. The Court finds that this is sufficient to state a claim based upon a completed electronic fund transfer. Although PayLease intimated at oral argument that it may never have actually received the $25 in its own account, suggesting that the transaction was never completed, this contention goes beyond the scope of the allegations in the Amended Complaint, which plausibly allege that a completed transfer occurred, and is therefore not properly considered by the Court at this motion to dismiss stage. Because the Amended Complaint adequately alleges a completed transfer, the Court will deny PayLease's motion to dismiss to the extent it is based on the contention that no electronic fund transfer ever occurred.

B.      Money Recredited

PayLease next argues that because the $25 was recredited to Cobb's account on

June 4, it cannot be liable under EFTA.[4]  The only case that PayLease cites in support of

its position that repayment of erroneously transferred funds absolves a transferring entity

from liability under EFTA is *Raine v. Reed*, 14 F.3d 280 (5th Cir. 1994).  In *Raine*, the

court considered a request by Raine to set aside a decision of the Federal Deposit

Insurance Corporation ("FDIC") denying her federal deposit insurance on a portion of

funds that she claimed had been deposited in her bank account at the time her bank was

declared insolvent.  *Id.* at 280-81.  Raine's fiancé had made a series of unauthorized

withdrawals from her account, which she had reported to her bank.  *Id.* at 281.  The bank

failed to recredit her account for those withdrawals, and Raine brought a lawsuit against

the bank.  *Id.*  While the lawsuit was pending, the bank was declared insolvent and the

FDIC took over as receiver.  *Id.*  The FDIC intervened in the lawsuit pending against the

bank, and moved to dismiss arguing that petitioner's claim for reimbursement was not

covered by deposit insurance – because the unauthorized withdrawals were not on deposit

with the bank and thus not covered by deposit insurance at the time the bank failed.  *Id.* at

281-82.  As support for her position, Raine argued that under EFTA a bank is required to

correct an unauthorized withdrawal by recrediting an account and therefore the money

---

[4]   The fact that the $25 fee had to be recredited to Cobb's bank account also provides
support for the conclusion explained above that the Amended Complaint adequately pleads that a
completed electronic fund transfer occurred.  In other words, if no electronic fund transfer had
been completed, there would have been no reason to "deposit[]" or "add[]" the funds back into
Cobb's account.  (Miller Decl., Ex. A at 3.)

removed from her account by her fiancé "in effect always remained on deposit in her account." *Id.* at 282.

The *Raine* court found Raine's reliance on EFTA to be misplaced.  The court began by explaining that, under FDIC regulations, no deposit insurance was allowed because the funds were not in her account at the time of the bank's insolvency.  *Id.* at 283.  The court then went on to conclude that EFTA did not alter its analysis because "that statute supplies only a cause of action to a customer seeking to have money recredited after an unauthorized withdrawal." *Id.* (citing 15 U.S.C. §§ 1693f(e), 1693(m)). Specifically, the court explained "EFTA does not change the fact that at the time of the transfer of insured deposits . . . the money was not in her account.  While she may have had a right to reimbursement for the money removed, she did not have the actual funds in her account at the time the bank failed, and, therefore, the deposit was not covered." *Id.*

Although the *Raine* court stated that EFTA "supplies only a cause of action to a customer seeking to have money recredited," *id.*, the context of the court's statement is readily distinguishable from the circumstances in the present case, and the case does not support PayLease's argument that Cobb cannot maintain a cause of action because he has since recovered the $25 fee.  First, *Raine* was discussing the import of EFTA in the context of whether the Act had any bearing on the FDIC's determination of which funds were in the petitioner's account at a particular time for purposes of deposit insurance. The court's statement that EFTA was inapplicable because it supplies a cause of action only for customers seeking to have money recredited meant only that EFTA provides a mechanism for recrediting an account rather than a mechanism by which a consumer can

claim that certain funds, which have not yet been recredited, are part of an account balance for purposes of deposit insurance.

Second, *Raine* spoke of recrediting as it relates to EFTA in the context of a very specific statutory provision within the Act.  Specifically, *Raine* cited 15 U.S.C. § 1693f, which is a provision of EFTA dealing with error resolution between consumers and their financial institutions.  Section 1693f requires a financial institution to investigate when a consumer informs the financial institution about an alleged error in the consumer's account.  *See* 15 U.S.C. § 1693f(a); *Collins v. Mo. Elec. Coops. Emps. Credit Union*, Civ. No. 05-0009, 2006 WL 2189693, at *7 (E.D. Mo. July 26, 2006).  If a financial institution determines that an error did occur, the statute requires it to promptly "correct the error."  15 U.S.C. § 1693f(b).  Additionally, the financial institution can extend its time for conducting an investigation if the institution "provisionally recredit[s] the consumer's account for the amount alleged to be in error" during the pendency of the investigation.  *Id.* § 1693f(c); *see also Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 144 (D. Mass. 2005).  Therefore, *Raine*'s statement that EFTA supplies a cause of action to a customer seeking to have money recredited after an unauthorized withdrawal can fairly be read as relating only to the specific statutory provision cited, which governs the relationship between customers and their financial institutions and provides a mechanism for investigation and recrediting of an account.  Accordingly, the Court concludes that *Raine* does not support PayLease's argument because it says nothing about whether liability under EFTA's **notice** provisions for entities other than

financial institutions can be violated even where the funds have already been returned to the consumer prior to the commencement of a lawsuit.

PayLease has provided, and the Court has found, no other authority indicating that an entity is absolved of liability arising out of notice provisions of EFTA where it has already recredited the account in question.   At least two provisions of EFTA strongly suggest that a plaintiff **can** maintain a cause of action under the Act even where the funds in question have already been returned.

First, EFTA provides for the recovery of statutory damages, in addition to "any actual damage sustained" by a consumer.   15 U.S.C. § 1693m(a)(1).   The fact that a consumer can recover statutory damages indicates that the consumer need not be able to prove in each case that he has suffered actual damages.   *See Burns v. First Am. Bank*, Civ. No. 04-7682, 2006 WL 3754820, at *6 (N.D. Ill. Dec. 19, 2006) ("[F]or a plaintiff seeking statutory damages, all that is required is proof that the statute was violated." (alteration and internal quotation marks omitted)).   Additionally, courts have concluded that even where a plaintiff "did not suffer damages" "'under the plain terms of the Act, civil liability attaches to **all** failures of compliance with respect to **any** provision of the Act.'"   *Berenson*, 403 F. Supp. 2d at 146 (emphasis in original) (quoting *Bisbey v. D.C. Nat'l Bank*, 793 F.2d 315, 317 (D.C. Cir. 1986)).   That the Act provides for statutory damages – and does not require actual damages to have been suffered – indicates that a plaintiff's cause of action is likely not lost simply because an entity has repaid the inappropriately assessed amounts.

Second, EFTA already provides a procedure for a potential defendant to reimburse a plaintiff and avoid liability.  Section 1693m(e) provides:

> Notification to consumer prior to action; adjustment of consumer's account
>
> A person has no liability under this section for any failure to comply with any requirement under this subchapter if, prior to the institution of an action under this section, the person notifies the consumer concerned of the failure, complies with the requirements of this subchapter, and makes an appropriate adjustment to the consumer's account and pays actual damages or, where applicable, damages in accordance with section 1693h of this title.

15 U.S.C. § 1693m(e); *see also Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 410 (D. Md. 2012) (explaining that a potential defendant is entitled to the protection of § 1693m(e)'s safe harbor if "before litigation is commenced, the person (1) notifies the consumer concerned of the failure, (2) complies with the requirements of EFTA, and (3) makes an appropriate adjustment to the consumer's account and pays actual damages" (internal quotation marks omitted)).  This safe harbor provision – which provides a clear mechanism for defendants to avoid possible liability prior to the commencement of litigation – strongly suggests that merely repaying unauthorized fund transfers is insufficient to avoid liability under EFTA.  To allow mere repayment of funds to be sufficient to escape liability under § 1693m(a) would render § 1693m(e)'s safe harbor – which also requires the person to notify the consumer of the failure – superfluous, as a defendant would never have any reason to comply with the notification portion of the safe harbor if it were sufficient to merely return the consumer's funds.  *See Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002) ("[C]ourts should not interpret one provision [of a statute] in a manner that renders other sections in the same statute

inconsistent, meaningless, or superfluous." (internal quotation marks omitted)).  Because

EFTA's provision of statutory damages and safe harbor provision indicate that a

defendant cannot escape liability by merely recrediting a consumer's account, the Court

will deny PayLease's motion to dismiss to the extent it seeks dismissal on the basis that

Cobb recovered the $25 fee prior to the commencement of litigation.

### C.    Telephone Authorization

PayLease next argues that EFTA is inapplicable to Cobb's claim because

"Plaintiff authorized a non-recurring ACH debit by telephone to his agent, Common

Properties." (Def.'s Mem. in Supp. of Mot. to Dismiss at 10.)  As noted above, EFTA's

definition of electronic fund transfer includes transfers "initiated through [a] telephonic

instrument." 15 U.S.C. § 1693a(7).  But EFTA specifically exempts from the definition

of electronic fund transfer "any transfer of funds which is initiated by a telephone

conversation between a consumer and an officer or employee of a financial institution

which is not pursuant to a prearranged plan and under which periodic or recurring

transfers are not contemplated."  15 U.S.C. § 1693a(7)(E).  The term "financial

institution" is defined as "a State or National bank, a State or Federal savings and loan

association, a mutual savings bank, a State or Federal credit union, or any other person

who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C.

§ 1693a(9).  Courts have observed that the legislative history of EFTA suggests that

electronic fund transfers initiated by a telephone conversation with a financial institution

are exempt from EFTA "because of the personal element in these transfers." *Kashanchi*

*v. Tex. Commerce Med. Bank, N.A.*, 703 F.3d 936, 940 (5th Cir. 1983).  In particular, in

passing EFTA Congress was concerned with "impersonal transactions, [which] are much

more vulnerable to fraud, embezzlement, and unauthorized use than the traditional

payment methods," whereas "informal non-recurring consumer-initiated transfers were

excluded . . . because they are not prone to computer error or institutional abuse since

they are handled on a personal basis."  *Id.* at 940-41; *see also Davis v. Wash. Mut., Inc.*,

233 F.R.D. 247, 249 (D. Conn. 2005) ("The presence of personal contact with bank

personnel who intercede between a consumer and the electronic device used to facilitate a

transaction removes that transaction from the scope of the EFTA."  (alteration and

internal quotation marks omitted)).

PayLease argues that because Cobb agreed to authorize the initial $37.95 rental

application fee over the phone with a representative of Common Properties, the later

charge of $25 by PayLease is exempt under EFTA as a transaction "initiated by a

telephone conversation between a consumer and an officer or employee of a financial

institution."  15 U.S.C.A. § 1693a(7)(E).  But PayLease's argument is misplaced.  First,

Common Properties is undisputedly not a financial institution as defined by EFTA.

Therefore, any telephone conversation between Cobb and Common Properties does not

satisfy the exemption under § 1693a(7)(E), which only excludes from the definition of

electronic fund transfers transfers initiated by telephone conversations between a

consumer and an officer or employee of a financial institution.  Although PayLease

appears to argue that the Court should expand the exemption to include transfers initiated

by any telephone conversation that has an element of personal contact, it has provided no

support for this expansion in light of the unambiguous language of the statute which confines the exemption to telephone conversations with representatives of financial institutions. *See Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (explaining that "settled principles of statutory construction" require courts to "apply the statute according to its terms" where "the statutory text is plain and unambiguous"). Second, even if a telephone conversation initiating an electronic transfer of funds between a consumer and any entity was sufficient to take the transaction out of EFTA, here, the transaction at issue was not authorized by telephone. The telephone conversation between Cobb and Common Properties alleged in the Amended Complaint authorized only the electronic fund transfer of the $37.95 rental application fee. The telephone conversation included no mention of the later $25 fee, nor did Cobb authorize the $25 fee during the conversation. Moreover, the $25 fee was subtracted from Cobb's account in an entirely separate electronic fund transfer from the transfer of the $37.95 rental application fee. Because the telephone conversation did not authorize or initiate the at-issue transaction, the purposes of the telephone exemption are not met here because there was no personal interaction between the consumer and the electronic device used to facilitate the transaction that subtracted the $25 fee from Cobb's account. Accordingly, the Court will deny PayLease's motion to dismiss Cobb's EFTA claims to the extent it is based upon application of the telephone exception.

### D.     Lack of Notice

Finally, PayLease argues that Cobb's EFTA claims must be dismissed because the Amended Complaint "fails to allege that PayLease did not make the required disclosures to Common Properties."   (Reply at 5, Mar. 20, 2014, Docket No. 30.)   Specifically, PayLease argues that

> [b]y electing to use Common Properties as his agent, Plaintiff entrusted Common Properties to act on his behalf. . . . Essentially, Plaintiff asked another entity (Common Properties) to process the transaction with PayLease for him.   In the absence of any contrary allegation, we can assume that PayLease made the required disclosures to Common Properties (in fact they did).   To hold PayLease responsible for any alleged failure by Common Properties to communicate those disclosures to Plaintiff puts PayLease in an impossible situation, where it is being punished in situations when it made all of the required disclosures.

(*Id.* at 5-6.)   As support for this argument, PayLease relies upon the official staff interpretations of the notice provision underlying Cobb's EFTA claim, which provide that "[t]he person initiating an EFT to a consumer's account to electronically collect a fee for an item returned unpaid may obtain the authorization and provide the notices required under § 205.3(b)(3) through third parties, such as merchants."  12 C.F.R. Pt. 205, Supp. I, ¶ 3(b)(3).

The Court concludes that dismissal based upon PayLease's contentions about the nature of Cobb's and its own relationship to Common Properties and what type of notice it did or did not provide to Common Properties would be inappropriate at this stage.  The provision of Regulation E that Cobb brings his EFTA claim under provides that "the person initiating an electronic fund transfer to collect a fee for the return of an electronic fund transfer or a check that is unpaid . . . must obtain **the consumer's authorization** for

each transfer." 12 C.F.R. § 205.3(b)(3)(i) (emphasis added).  Authorization is obtained if the person collecting the fee provides notice to the consumer of the fee.  *See id.*  Here, according to the allegations in the Amended Complaint, the person collecting the fee at issue was PayLease.   Although the official interpretations of the regulations allow PayLease to obtain that consumer authorization through third parties, PayLease has identified no portion of EFTA or its implementing regulations which shield it from liability if it assumes that a third party will provide notice to the consumer and obtain the statutory authorization, and that third party fails to do so.  The Amended Complaint contains specific allegations that PayLease had no reason to believe that Common Properties was providing notice to Cobb on PayLease's behalf.  (*See* Am. Compl. ¶ 40 ("Defendant PayLease had no basis to expect or believe that Common Propert[ies] provided Plaintiff with any notice that he would be charged an NSF Fee if the ACH was returned due to insufficient funds."); *id.* ¶ 41 ("Upon information and belief, it appears that Common Properties did not have to respond or in any way reflect or advise the Defendant either that it had read certain ACH materials provided by Defendant or that it agreed to and would provide such notice.   Under these circumstances, Defendant PayLease had no basis for expecting or believing that Plaintiff had received any notice.")).   Additionally, Cobb's allegations are based upon the fact that **he** never received notice.   Whether PayLease provided notice to Common Properties is not dispositive of Cobb's claims at this stage because the Amended Complaint clearly alleges that he, the consumer, never received the notice, and therefore did not provide authorization.  (*See* Am. Compl. ¶¶ 13-14, 37-39.)  Although PayLease speculates that

Common Properties was acting as Cobb's agent and therefore had authority to authorize the $25 fee on Cobb's behalf, these facts are not contained in the Amended Complaint and are therefore not properly considered at this motion to dismiss stage. Accordingly, because the Amended Complaint plausibly alleges that Cobb never received the required notices, and PayLease – the entity initiating the electronic fund transfer at issue – had no reason to believe that he had received the notice or any basis to rely upon Common Properties to provide such notices, the Court concludes that Cobb has adequately stated a cause of action under EFTA, and will deny PayLease's motion to dismiss this claim.

## III.    CONVERSION

Under Minnesota law, conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotation marks omitted). A claim for conversion requires two elements: (1) that plaintiff has a property interest in some property; and (2) that defendant deprives the plaintiff owner of that interest. *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994). "The measure of damages in a conversion case is generally the value of the property at the time of the conversion plus interest from that time." *Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 963 (D. Minn. 2007) (internal quotation marks omitted).

PayLease argues that Cobb's claim for conversion based on the taking of the $25 fee must be dismissed because "Plaintiff was returned his fee assessment, and PayLease

never received the money." (Def.'s Mem. in Supp. of Mot. to Dismiss at 12.) Cobb acknowledges that he has already recovered the $25 fee, and therefore return of the fee cannot form the basis of his conversion claim. But Cobb argues that his conversion claim can be maintained because "Defendant interfered with, retained, and benefited from [the taking of the $25 fee] until 6 days later on June 4, 2013, when the $25 was replaced by a second fund transfer." (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 14, Mar. 6, 2014, Docket No. 27.) Because the only type of damage recoverable under a conversion theory is the fair market value of the property at the time of the conversion plus interest, the only damages Cobb would be entitled to on this claim are interest on the $25 running from May 29 through June 4. *See Olen*, 2012 WL 1580994 at *5 & n.5 (dismissing plaintiff's claim for conversion where the only damages alleged were loss of use of $54 for twenty-four hours and where the terms of the account in which the $54 was kept did not allow plaintiff to accrue interest). Although these damages will likely be miniscule, the Court finds that Cobb has adequately pled a conversion claim based upon PayLease's alleged retention of six-days' worth of interest on the $25 fee. *See Tennille v. W. Union Co.*, 751 F. Supp. 2d 1168, 1173 (D. Colo. 2010) (denying a motion to dismiss a conversion claim where "[b]y holding customers' unclaimed deposits, sometimes for years, while those deposits accrued interest, and then failing to return that interest or an amount compensating Plaintiffs for the lost time-value of their deposits, Western Union exercised dominion over, and benefitted at Plaintiffs' expense by holding, moneys that belonged to Plaintiffs . . . . Because Plaintiffs acknowledge Western Union returned the deposit principle, the essential harm alleged is the wrongful retention, and failure to return and/or

the conversion of, the interest earned on that principle.").[5]   Accordingly, the Court will deny PayLease's motion to dismiss Cobb's conversion claim.

## IV.   UNJUST ENRICHMENT

"To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate 'that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit.'"   *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (quoting *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001)).   Cobb's unjust enrichment claim is based upon the allegation that "[b]y unlawfully collecting NSF Fees from Plaintiff and Class members, Plaintiff and Class members conferred benefits upon the Defendant PayLease, to which it was not and is not legally entitled, which Defendant PayLease nonetheless knowingly and voluntarily appreciated and accepted." (Am. Compl. ¶ 51.)   PayLease raises the same arguments in support of dismissal of the unjust enrichment claim as it does with respect to the

---

[5] The Court also declines to dismiss Cobb's conversion claim based upon PayLease's contention that "Plaintiff's own bank statement shows [that] PayLease never received the money." (Def.'s Mem. in Supp. of Mot. to Dismiss at 12.)   As explained above, whether PayLease actually gained control of the money – and therefore may be liable for conversion – is a question to be resolved during discovery.   The Amended Complaint adequately alleges that PayLease initiated a transfer which assessed or took a fee, removing $25 from Cobb's bank account.   That money did not reappear in Cobb's account until six days later.   The reasonable inferences to be drawn from the allegations and the account statements are that PayLease – having initiated a withdrawal from Cobb's account – gained control of the funds.   Contrary to PayLease's contention, Cobb's bank statements provide no indication that PayLease did not have control over the funds; they merely show that the $25 fee was not in Cobb's account during the six-day period.   Therefore, at this motion to dismiss stage, the Court cannot rely on PayLease's assertion that it never took control of the $25.

conversion claim. Similarly, as with his conversion claim, Cobb concedes that the $25 fee originally assessed by PayLease has since been returned to him, and therefore frames his unjust enrichment claim as based upon the benefit PayLease retained by its holding of the $25 for the six-day period between May 29 and June 4.

Although, like the conversion claim, the claim for unjust enrichment could at most entitle Cobb to the small amount of interest earned on the $25 fee in the six-day period, the Court concludes that the allegations in the Amended Complaint are sufficient to allow the claim to move forward at this stage. *See Tennille*, 751 F. Supp. 2d at 1171 (denying defendant's motion to dismiss an unjust enrichment claim where "Plaintiffs allege Western Union accrued interest on moneys belonging to Plaintiffs, during the entire period of time Western Union held those moneys without informing Plaintiffs they remained unclaimed, under circumstances where retaining that interest for itself rather than returning it to Plaintiffs was unfair, inequitable, and unjust"). Failing to require PayLease to pay interest on the $25 could result in a situation where PayLease is left in a better position than it was in before it wrongfully acquired Cobb's funds, which would be contrary to the principles underlying unjust enrichment. *See Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) ("[T]he party to whom the payment mistake was made must be left in the same situation after he refunds it as he would have been left had the payment to him not been made." (emphasis and internal quotation marks omitted)); *cf Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 131 (3d Cir. 2000) (concluding, in the context of awarding prejudgment interest, that "to allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust

enrichment" (alteration and internal quotation marks omitted)); *Litchfield v. Bank of N.Y.*, Civ. No. 99-97, 2000 WL 1449848, at *3 (D. Me. Sept. 21, 2000) ("Because the Bank of New York reported its mistake to Plaintiffs and returned all of the money in question, and because the Court already has ordered the Bank **to pay interest on those funds**, there is no evidence that the Bank of New York has been [unjustly] enriched at the expense of Plaintiffs." (emphasis added)).  If discovery should reveal that PayLease never actually acquired the $25, or retained no benefit from the money for the period of time between May 29 and June 4, it is unlikely that Cobb would be able to prevail on his claim for unjust enrichment.  At this motion to dismiss stage, however, taking the facts alleged in the Amended Complaint as true, the Court concludes that Cobb has stated a cause of action for unjust enrichment, and will therefore deny PayLease's motion to dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 16] is **DENIED**.

DATED:  July 22, 2014              ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                     United States District Judge